## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LUMIO HOLDINGS, INC., *et al.*,[1] | : | Case No. 24-11916 (JKS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ----------------------------------------------------------x | : | |
| | : | |
| JEFFREY T. VARSALONE, in his capacity as | : | |
| LIQUIDATING TRUSTEE of the LUMIO | : | |
| LIQUIDATING TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 25-52132 (JKS) |
| | : | |
| SMART ENERGY TODAY, INC., | : | |
| REX SCHADE, YUMI SCHADE, and | : | |
| JONATHAN GIBBS, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ----------------------------------------------------------x | | |

### DEFENDANTS REX SCHADE, YUMI SCHADE, AND JONATHAN GIBBS'
### ANSWER TO THE COMPLAINT AND COUNTERCLAIMS

Defendants Rex Schade, Yumi Schade, and Jonathan Gibbs (together, the "Defendants"),

by and through their undersigned counsel, hereby answer the allegations contained in *Adversary*

*Complaint* [D.I. 1] (the "Complaint"), filed by Plaintiff Jeffrey T. Varsalone, solely in his capacity

as liquidating trustee of the Lumio Liquidating Trust (the "Trustee" or "Plaintiff" and Lumio

Liquidating Trust, the "Trust"), as follows:

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Liquidating Trustee's headquarters is located at 1550 W Digital Drive, Suite 200, Lehi, UT 84043.

## NATURE OF THE CASE

1.      In December 2021, Lumio was created through a strategic combination of four regional residential solar businesses in Utah to deliver top-tier residential solar solutions to customers across the nation. One of those businesses was SET, whose founders were R. Schade, Y. Schade, and Gibbs (the "*Founders*"). In bringing SET into Lumio, the parties entered into a Reorganization and Contribution Agreement, dated December 10, 2021 (the "*APA*"). The Founders stayed on as critical officers and directors of Lumio.

**ANSWER: The allegations in Paragraph 1 describe the APA and related agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 1 to the extent they seek to characterize the APA and related agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. Defendants admit that following the closing of the APA, R. Schade, and Y. Schade became officers of Lumio.  It is denied that Gibbs was ever an officer or Director of Lumio.  By way of further clarification, Gibbs left Lumio prior to closing on the APA, in September 2021.  To the extent a response is required, the remaining allegations are denied.**

2.      Following the combination, unbeknownst to Lumio, the Founders engaged in systematic and serious malfeasance for their own personal gain, leading to the bankruptcy of the Company.

**ANSWER: Denied.**

3.      In particular, as a result of an investigation that is ongoing, Plaintiff discovered that: (1) R. Schade and Y. Schade used Lumio credit cards for thousands of dollars for their personal expenses and (2) the Founders kept over $163,000 receivables due to the Company for themselves.

**ANSWER: Denied.**

4.      As late as January 2023, the Founders were well-aware of these financial improprieties and wrongdoing yet refused to pursue or prosecute any remedies on behalf of Lumio. This failure resulted in millions of dollars in damages to Lumio, while breaching the fiduciary duties the Founders owed to Lumio as directors and officers.

**ANSWER: Paragraph 4 is a rhetorical statement or legal conclusion to which a response is not required.  To the extent an answer is required, Defendants admit that they did not pursue remedies on behalf of Lumio for non-existent claims.   The remaining allegations of paragraph 4 are denied.**

5.      To add insult to injury, R. Schade and Y. Schade violated the APA, their Employment Agreements and their Restrictive Covenant Agreements (as such terms are defined below) on their way out the door by wrongfully soliciting Lumio customers, contractors and employees while working for a direct competitor of Lumio. In essence, they stole the blueprints for the business on their way out the door.

**ANSWER: Paragraph 5 is a rhetorical statement or legal conclusion to which a response is not required.  To the extent a response is required, denied.**

6.      Plaintiff now seeks a judgment and respectfully requests that this Court: (1) find Defendants liable to Plaintiff for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty; (2) award damages in an amount to be determined, but no less than $184,330; (3) award pre- and post-judgment interest and attorneys' fees; and (4) grant such other and further relief as the Court deems just and proper.

**ANSWER: Paragraph 6 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

## JURISDICTION, VENUE, AND CHOICE OF LAW

7.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 12, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

**ANSWER: Paragraph 7 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that this Court has subject matter jurisdiction over this adversary proceeding.**

8.      Pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure and rule 7008-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to entry of a final judgment or order with respect to the Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**ANSWER: Paragraph 8 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Defendants consent to the entry of a final order or judgment by this Court in this adversary proceeding.**

9.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**ANSWER: Paragraph 9 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that venue is proper in this District.**

10.     Delaware law governs Plaintiff's claims arising under the APA and Plaintiff's claims for breaches of fiduciary duties. *See* Ex. 1, § 8.9.

**ANSWER: The allegations in Paragraph 10 describe the APA, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 10 to the extent they seek to**

4

characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the allegations are denied.

11.     Utah law governs Plaintiff's claims arising under the Employment Agreements and Restrictive Covenant Agreements (as defined below). *See* Exs. 2, 4, 5, 7, § 14; Exs. 3, 6, § 7.10.

**ANSWER: The allegations in Paragraph 11 describe the Employment Agreements, which are documents that speak for itself.  Defendants deny the allegations in Paragraph 11 to the extent they seek to characterize the Employment Agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the allegations are denied.**

12.     Under Section 9.3 of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Lumio Holdings, Inc. and Lumio HX, Inc. [Docket No. 496-1], the Trustee has the authority to bring the causes of action contained in this Complaint and to otherwise administer the Liquidating Trust.

**ANSWER: The allegations in paragraph 12 constitute conclusions of law to which no response is required.  To the extent a response is required, Defendants are without sufficient information or information to form a belief as to the truth of the allegations in paragraph 12.  They are therefore denied.**

**PARTIES**

13.     Plaintiff is Jeffrey T. Varsalone, solely in his capacity as the Liquidating Trustee of the Trust.

**ANSWER: Admitted.**

14.    The Liquidating Trust is organized under the laws of the State of Delaware.

**ANSWER: Defendants are without sufficient information or information to form a belief as to the truth of the allegations in paragraph 14.  They are therefore denied.**

15.    Defendant SET is a limited liability company organized under the laws of the State of Washington.

**ANSWER: Admitted.**

16.    Upon information and belief, Defendant R. Schade is an individual and citizen of the State of Washington.

**ANSWER: Admitted.**

17.    Upon information and belief, Defendant Y. Schade is an individual and citizen of the State of Washington.

**ANSWER: Admitted.**

18.    Upon information and belief, Defendant Gibbs is an individual and citizen of the State of Utah.

**ANSWER: Admitted.**

## FACTUAL BACKGROUND

**A.    Lumio's Formation and the Asset Purchase Agreement.**

19.    Lumio was a leader in personalized renewable energy, delivering top-tier residential solar solutions to its customers across the nation.

**ANSWER: Defendants are without sufficient information or information to form a belief as to the truth of the allegations in paragraph 19.  They are therefore denied.**

20.     Lumio was founded in December 2021 through the strategic combination of four regional residential solar businesses: (1) SET, (2) Atlantic Key Energy, LLC ("*AKE*"), (3) DECA Living, LLC ("*DECA*"), and (4) Lift Energy Construction Inc. ("*LIFT*").

**ANSWER: The allegations in Paragraph 20 describe the APA and related agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 20 to the extent they seek to characterize the APA and related agreements and respectfully refer the Court to those documents for a full and accurate recitation of their contents. To the extent a response is required, the remaining allegations are denied.**

21.     To effectuate the strategic combination, Lumio entered into four separate agreements with each of SET, AKE, DECA, LIFT, effective December 10, 2021, whereby Lumio purchased, *inter alia*, certain of each company's most essential assets – the entire guts and business blueprints for the company, including without limitation, all confidential and proprietary information, strategic plans, pricing information, customer data, vendor data and information, manufacturer data and information, receivables, rights to payments, and contracts.

**ANSWER: The allegations in Paragraph 21 describe the APA and related agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 21 to the extent they seek to characterize the APA and related agreements and respectfully refer the Court to those documents for a full and accurate recitation of their contents. To the extent a response is required, the allegations are denied.**

22.     The APA was entered into between (1) Lumio, as buyer, (2) R. Schade, Y. Schade, and Gibbs as SET shareholders, and (3) SET, as seller. A true and correct copy of the APA is attached hereto as **Exhibit ("Ex.") 1**.

**ANSWER: The allegations in Paragraph 22 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 22 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

23.     Pursuant to the APA, Lumio paid SET in 2,818,500 million shares of Lumio common stock and $25,000 in cash compensation in exchange for SET's rights, title, and interest in the certain "Assigned Assets," as defined in the agreement. *See* Ex. 1, APA, Introduction.

**ANSWER: The allegations in Paragraph 23 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 23 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

24.     The Assigned Assets Lumio purchased included, *inter alia*, (1) the Assigned Material Contracts listed on Schedule 1.1(a)(i); (2) "other receivables, including any prepayments and prepaid expenses"; (3) "[a]ll rights to payment, including all accounts receivable, deposits, prepaid expenses and amounts to be received for purchase orders not yet paid related to the Business"; and (4) "[a]ll contracts of [SET] relating to the Business, including but not limited to customer and supplier contracts." *See* Ex. 1, § 1.1(a).

**ANSWER: The allegations in Paragraph 24 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 24 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and**

accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.

**B.      The R. Schade and Y. Schade Become Officers of Lumio.**

25.      Following the APA, R. Schade and Y. Schade became officers of Lumio.

**ANSWER: Admitted.**

26.      On or about December 10, 2021, in connection with and as a condition precedent to the closing of the transaction contemplated by the APA, R. Schade and Lumio entered into: (i) an Employment Agreement pursuant to which R. Schade would be employed as Lumio's Vice President of Northwest Sales in exchange for a base salary of $250,000 per year and eligibility for an annual bonus of up to $550,000 (the "*2021 R. Schade Employment Agreement*"); and (ii) an Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions (the "*R. Schade Restrictive Covenant Agreement*"). A true and correct copy of the 2021 R. Schade Employment Agreement and R. Schade Restrictive Covenant Agreement are attached hereto as **Exhibits 2 and 3**, respectively.

**ANSWER: The allegations in Paragraph 26 describe the 2021 R. Schade Employment Agreement and the R. Schade Restrictive Covenant Agreement, which are documents that speak for themselves. Defendants deny the allegations in Paragraph 26 to the extent they seek to characterize the 2021 R. Schade Employment Agreement or the R. Schade Restrictive Covenant Agreement and respectfully refer the Court to those documents for a full and accurate recitation of their contents. To the extent a response is required, the remaining allegations are denied.**

27.     On or about May 12, 2023, R. Schade entered into a subsequent employment agreement with Lumio pursuant to which he would continue to be employed by Lumio as its Senior Vice President of Sales over PNW (the "*2023 R. Schade Employment Agreement*"). A true and correct copy of the 2023 R. Schade Employment Agreement is attached hereto as **Exhibit 4**.

**ANSWER: The allegations in Paragraph 27 describe the 2023 R. Schade Employment Agreement, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 27 to the extent they seek to characterize the 2023 R. Schade Employment Agreement and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

28.     The 2023 R. Schade Employment Agreement attached and incorporated the R. Schade Restrictive Covenant Agreement. *See* Ex. 4 § 9, Ex. B.

**ANSWER: The allegations in Paragraph 28 describe the 2023 R. Schade Employment Agreement, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 28 to the extent they seek to characterize the 2023 R. Schade Employment Agreement and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

29.     On or about December 10, 2021, in connection with and as a condition precedent to the closing of the transaction contemplated by the APA, Y. Schade and Lumio entered into: (i) an Employment Agreement pursuant to which Y. Schade would be employed as Lumio's Vice President of Integration in exchange for a base salary of $250,000 per year and eligibility for an annual bonus of up to $550,000 (the "*2021 Y. Schade Employment Agreement*"); and (ii) an

Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions (the "*Y. Schade Restrictive Covenant Agreement*", together with the R. Schade Restrictive Covenant Agreement, the "*Restrictive Covenant Agreements*"). A true and correct copy of the 2021 Y. Schade Employment Agreement and Y. Schade Restrictive Covenant Agreement are attached hereto as **Exhibits 5 and 6**, respectively.

**ANSWER**: **The allegations in Paragraph 29 describe the 2021 Y. Schade Employment Agreement and the Y. Schade Restrictive Covenant Agreement, which are documents that speak for themselves. Defendants deny the allegations in Paragraph 29 to the extent they seek to characterize the 2021 Y. Schade Employment Agreement or the Y. Schade Restrictive Covenant Agreement and respectfully refer the Court to those documents for a full and accurate recitation of their contents. To the extent a response is required, the remaining allegations are denied.**

30.     On or about May 12, 2023, Y. Schade entered into a subsequent Employment Agreement with Lumio pursuant to which Y. Schade would continue to be employed by Lumio as its Senior Vice President of Strategic Operations (the "*2023 Y. Schade Employment Agreement*", together with the 2021 R. Schade Employment Agreement, the 2023 R. Schade Employment Agreement and the 2021 Y. Schade Employment Agreement, the "*Employment Agreements*"). A true and correct copy of the 2023 Y. Schade Employment Agreement is attached hereto as **Exhibit 7**.

**ANSWER**: **The allegations in Paragraph 30 describe the 2023 Y. Schade Employment Agreement, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 30 to the extent they seek to characterize the 2023 Y. Schade Employment Agreement and respectfully refer the Court to that document for a full and accurate**

recitation of its contents. **To the extent a response is required, the remaining allegations are denied.**

31.     The 2023 Y. Schade Employment Agreement attached and incorporated the Y. Schade Restrictive Covenant Agreement. *See* Ex. 7 § 9, Ex. B.

**ANSWER: The allegations in Paragraph 31 describe the 2023 Y. Schade Employment Agreement, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 31 to the extent they seek to characterize the 2023 Y. Schade Employment Agreement and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

    **C.     R. Schade and Y. Schade Engage in Significant Malfeasance, Fiduciary Breaches, Unlawful Self-Dealing as Officers and Directors of Lumio and SET Materially Breaches the Asset Purchase Agreement.**

32.     Throughout the course of their time as officers and directors of Lumio, R. Schade and Y. Schade engaged in a pattern of self-dealing and misuse of corporate funds that violated Lumio policies and the duties they owed to the company.

**ANSWER: Paragraph 32 is a rhetorical statement or legal conclusion to which a response is not required.  To the extent a response is required, denied.**

33.     Following the closing of the APA, SET failed to remit accounts receivable payments due and owing to Lumio in violation of the parties' agreement.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivables but deny any implication that such payments belonged to Lumio. The remaining allegations are denied.**

12

      i.      ***Misuse of Corporate Credit Cards***

34.    As officers and directors of Lumio, R. Schade and Y. Schade received Lumio corporate credit cards to use for business purposes.

**ANSWER: Admitted.**

35.    R. Schade and Y. Schade abused and misused their corporate credit cards by charging Lumio for personal expenses that did not warrant reimbursement.

**ANSWER: Denied.**

36.    Upon information and belief, during his time as a Lumio officer, R. Schade charged $11,188.00 in personal expenses to his Lumio corporate credit card.

**ANSWER: Denied.**

37.    Upon information and belief, during his time as a Lumio officer and director, Y. Schade charged $10,049.00 in personal expenses to her Lumio corporate credit card.

**ANSWER: Denied.**

      ii.     ***SET and the Founders, as Lumio Officers and Directors, Retain Over $163,093 in Receivables Due to Lumio***

38.    Pursuant to the APA, SET agreed to "sell, contribute, convey, and assign" to Lumio SET's "rights, title, and interest, of every kind and nature in and to the Assigned Assets, in each case free and clear of all Liens other than Permitted Liens." *See* Ex. 1 § 1.1.

**ANSWER: The allegations in Paragraph 38 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 38 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

39.    The Assigned Assets Lumio purchased included, *inter alia*, (1) the Assigned Material Contracts listed on Schedule 1.1(a)(i); (2) "other receivables, including any prepayments and prepaid expenses"; (3) "[a]ll rights to payment, including all accounts receivable, deposits, prepaid expenses and amounts to be received for purchase orders not yet paid related to the Business"; and (4) "[a]ll contracts of [SET] relating to the Business, including but not limited to customer and supplier contracts." *See* Ex. 1 § 1.1(a).

**ANSWER: The allegations in Paragraph 39 describe the APA, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 39 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

40.    After the closing of the APA, SET and the Founders received $163,093 in payments for accounts receivable for Engineering, Procurement, and Construction commissions.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivable but deny any implication that such payments belonged to Lumio. The remaining allegations in Paragraph 40 are denied.**

41.    The $163,093 in payments for accounts receivable belonged to Lumio pursuant to the sale and assignments set forth in the APA.

**ANSWER: Paragraph 41 is legal conclusion to which a response is not required.  To the extent a response is required, denied.**

42.    Rather than remitting those payments to Lumio as required under the APA, SET and the Founders retained the payments for SET.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivable but deny any implication that such payments belonged to Lumio.  The remaining allegations in Paragraph 42 are denied.**

> ### iii.   *The Founders, as Lumio Officers and Directors, Refuse to Seek Redress for Non-Payment of Funds Owed to Lumio*

43.     Throughout the course of their time as Lumio officers and directors, and at a minimum at the beginning of 2023, the Founders were aware of J. Schade's and Y. Schade's misuse of Lumio corporate credit cards and SET's retention of accounts receivable payments due and owing to Lumio.

**ANSWER: Defendants are without sufficient information or information to form a belief as to the truth of the allegations in paragraph 43.  They are therefore denied.**

44.     Rather than pursuing a solution or litigation, the Founders, as Lumio officers and directors, refused to seek redress.

**ANSWER: The allegations in paragraph 44 present a hypothetical scenario, so Defendants can neither admit nor deny them. Admitted only that the Founders did not pursue a solution for a non-existent problem nor attempt to litigate non-existent claims. The remaining allegations in Paragraph 44 are denied.**

45.     The Founders chose not to pursue a solution or litigation because this would have been, in essence, pursuing a solution or litigation against themselves for their own conduct.

**ANSWER:  The allegations in paragraph 45 present a hypothetical scenario, so Defendants can neither admit nor deny them.  To the extent a response is required, denied**

> ### D.   R. Schade and Y. Schade Breach the Covenants in the APA and the Restrictive Covenant Agreements.

46.     Pursuant to Section 7.7 of the APA, R. Schade and Y. Schade each covenanted and agreed, among other things, that for "period commencing on the Closing Date [i.e., December 10,

2021] and continuing until the date that is the four-year anniversary of the Closing Date [i.e., December 10, 2025]" (the "*APA Restricted Period*"), and within the geographic boundaries of the United States of America, each would refrain from the following activities: "directly or indirectly, in any manner (whether on Seller's own account, or as an owner, operator, manager, consultant, officer, director, employee, investor, agent or otherwise) . . . engage directly or directly in the Business", or own any interest in, manage, control, participate in (whether as an owner operator, manager, consultant, officer, director, employee, investor, agent, representative or otherwise), or consult with or render services for any Person that is engaged in the Business, provided however, that no owner of less than 2% of the outstanding stock of any publicly traded corporation shall be deemed to engage solely by reason thereof in its business." Ex. 1 § 7.7(a), (b).

**ANSWER: The allegations in Paragraph 46 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 46 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

47.     Pursuant to Article 7.7 of the APA, R. Schade and Y. Schade also agreed and covenanted, among other things, that "During the Restricted Period, the Seller will not, directly or indirectly, in any manner (whether on his own account, as an owner, operator, manager, consultant, officer, director, employee, investor, agent or otherwise), (a) call upon, solicit or provide services to any Person that is or was affiliated with the Company in any way with the intent of selling or attempting to sell services related to the Business, (b) hire or engage or recruit, solicit or otherwise attempt to employ or engage or enter into any business relationship with any Person employed by Lumio or any of its Subsidiaries, to induce or attempt to induce any Person to leave such

employment, or (c) in any way interfere with the relationship between Lumio or its Subsidiaries and any employee, vendor or other Person with a current, former or prospective business relationship with Lumio or its Subsidiaries (including, without limitation, by making any negative or disparaging statements or communications regarding Lumio, any of its Subsidiaries or any of their operations, officers, director or investors)[.]" Ex. 1 § 7.7(c).

**ANSWER: The allegations in Paragraph 47 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 47 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

48.     The APA defines "Business" as the "marketing, designing, selling, financing, installing and maintaining state-of-the-art residential and/or commercial photovoltaic solar systems and storage batteries and related and ancillary products and services." Ex. 1, p. 1.

**ANSWER: The allegations in Paragraph 48 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 48 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

49.     R. Schade and Y. Schade agreed that "the character, periods and geographical area and the scope of the restrictions on the Seller activities in [Section 7.7 of the APA] are fair and reasonably required for the protection of Lumio and its Affiliates." Ex. 1 § 7.7(e).

**ANSWER: The allegations in Paragraph 49 describe the APA, which is a document that speaks for itself. Defendants deny the allegations in Paragraph 49 to the extent they seek to**

**characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

50.     Section 7.7 of APA provides that "[i]n the event of litigation involving this Section, the non-prevailing party shall reimburse the prevailing party for all costs and expenses, including reasonable attorneys' fees and expenses, incurred in connection with any such litigation, including any appeal therefrom." Ex. 1 § 7.7(d).

**ANSWER**: **The allegations in Paragraph 50 describe the APA, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 50 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

51.     Pursuant to the Restrictive Covenant Agreements with Lumio, R. Schade and Y. Schade agreed to not directly or indirectly compete with Lumio during the term of the Agreement or for a period of one year from the date of the termination in any geographic area where Lumio does business as of the termination date. *See* Ex. 3 § 4.1; Ex. 6 § 4.1.

**ANSWER**: **The allegations in Paragraph 51 describe the Restrictive Covenant Agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 51 to the extent they seek to characterize the Restrictive Covenant Agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

52.     "Directly or indirectly" competing under the Restrictive Covenant Agreements included (1) owning, managing, operating, or controlling, (2) participating in the ownership,

management, operation, or control of, or (3) being connected with or having any interest in, as a stockholder, director, officer, or employee, any business which is the same as or a direct market competitor of any business that is conducted by Lumio or any of its subsidiaries at the time of the termination date. *See* Ex. 3 § 4.2; Ex. 6 § 4.2.

**ANSWER: The allegations in Paragraph 52 describe the Restrictive Covenant Agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 52 to the extent they seek to characterize the Restrictive Covenant Agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

53.    Each of the Founders agreed that the non-compete covenants in their Restrictive Covenant Agreements were reasonable and necessary for the goodwill of Lumio. *See* Ex. 3 § 4.3; Ex. 6 § 4.3.

**ANSWER: The allegations in Paragraph 53 describe the Restrictive Covenant Agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 53 to the extent they seek to characterize the Restrictive Covenant Agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

54.    The Founders also agreed that they would not, for one year following their termination of employment, directly or indirectly solicit or attempt to solicit the business of any of the customers or clients of Lumio who became known to them while employed by Lumio if such solicitation is competitive with the business of Lumio. *See* Ex. 3 § 6.5; Ex. 6 § 6.5.

**ANSWER: The allegations in Paragraph 54 describe the Restrictive Covenant Agreements, which are documents that speak for themselves.  Defendants deny the allegations in**

**Paragraph 54 to the extent they seek to characterize the Restrictive Covenant Agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

55.     The Restrictive Covenant Agreements further provided that the Founders would not, for one year following their termination of employment, directly or indirectly solicit or attempt to solicit the services of any Lumio employees, nor would the Founders directly or indirectly hire any Lumio employees. *See id.*

**ANSWER: The allegations in Paragraph 55 describe the Restrictive Covenant Agreements, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 55 to the extent they seek to characterize the Restrictive Covenant Agreements and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

56.     Section 14 of R. Schade's and Y. Schade's 2023 Employment Agreements, which incorporated the terms of the Restrictive Covenants Agreement, provides that "the prevailing party in any litigation relating to the interpretation or enforcement of this Agreement shall be entitled to reasonable costs and attorneys' fees." *See* Ex. 4 § 6.5; Ex. 7 § 6.5.

**ANSWER: The allegations in Paragraph 56 describe the R. Schade 2023 Employment Agreement and the Y. Schade 2023 Employment Agreement, which are documents that speak for themselves.  Defendants deny the allegations in Paragraph 56 to the extent they seek to characterize the R. Schade 2023 Employment Agreement or the Y. Schade 2023 Employment Agreement and respectfully refer the Court to those documents for a full and accurate recitation of its contents. To the extent a response is required, the remaining allegations are denied.**

57.     R. Schade's employment with Lumio terminated on or about November 17, 2023.

**ANSWER: Admitted.  By way of further response, R. Schade was terminated without cause pursuant to Section 5.3 of the R. Schade 2023 Employment Agreement.**

58.     Y. Schade employment with Lumio terminated on or about November 17, 2023.

**ANSWER: Admitted.  By way of further response, Y. Schade was terminated without cause pursuant to Section 5.3 of the Y. Schade 2023 Employment Agreement.**

59.     Upon information and belief, within one year of their termination of employment with Lumio, and during the APA Restricted Period, the R. Schade and Y. Schade became employed by, provided services to, or held ownership interests in Solar AI, a company offering services directly competitive to Lumio, and solicited Lumio employees and customers on behalf of Solar AI.

**ANSWER: Admitted only that R. Schade and Y. Schade became owners and operators of Solar AI.  The remaining allegations in Paragraph 51 are denied.**

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Contract – Failure to Remit Accounts Receivable Under the APA)**
*Against SET, R. Schade, Y. Schade, and Gibbs*

60.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.**

61.     The APA is a valid and enforceable contract.

**ANSWER: Paragraph 61 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

62.     Lumio performed all of its obligations under the APA.

**ANSWER: Paragraph 62 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

63.     SET, R. Schade, Y. Schade, and Gibbs breached the APA by failing to remit accounts receivable payments and other payments received post-closing to Lumio, as required by the APA.

**ANSWER: Paragraph 63 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

64.     SET, R. Schade, Y. Schade, and Gibbs breached the APA by failing to remit $163,093.00 in accounts receivable owed to Lumio, as required by the APA.

**ANSWER: Paragraph 64 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

65.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $163,093.00.

**ANSWER: Denied.**

**SECOND CAUSE OF ACTION**
**(Conversion)**
*Against SET, R. Schade, Y. Schade, and Gibbs*

66.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.**

67.     Pursuant to the terms of the APA, Lumio has the post-closing right to the possession of accounts receivable and other payments and interests in certain Assigned Material Contracts.

**ANSWER: The allegations in Paragraph 67 describe the APA, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 67 to the extent they seek to**

characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the allegations are denied.

68.    SET, R. Schade, Y. Schade, and Gibbs breached the APA by failing to remit $163,093.00 in accounts receivable owed to Lumio, as required by the APA.

**ANSWER: Paragraph 68 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

69.    SET, R. Schade, Y. Schade, and Gibbs have wrongfully exercised dominion and control over the funds due and owing to Lumio.

**ANSWER: Paragraph 69 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

70.    R. Schade and Y. Schade have also wrongfully exercised dominion and control over the funds due and owing to Lumio for personal expenses charged to their corporate credit cards.

**ANSWER: Paragraph 70 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

71.    Defendants refuse to remit these wrongfully held funds to Lumio.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivable but deny any implication that such payments belonged to Lumio or were wrongfully retained by SET. The remaining allegations in Paragraph 71 are denied.**

72.    As a direct and proximate result, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $184,330.

**ANSWER: Denied.**

23

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)
*Against SET, R. Schade, Y. Schade, and Gibbs*

73. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.**

74. Pursuant to the terms of the APA, Lumio has the post-closing right to the possession of accounts receivable and other payments and interests in certain Assigned Material Contracts.

**ANSWER: The allegations in Paragraph 74 describe the APA, which is a document that speaks for itself.  Defendants deny the allegations in Paragraph 74 to the extent they seek to characterize the APA and respectfully refer the Court to that document for a full and accurate recitation of its contents. To the extent a response is required, the allegations are denied.**

75. SET, R. Schade, Y. Schade, and Gibbs retained $163,093.00 in accounts receivable owed to Lumio as required by the APA.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivable but deny any implication that such payments belonged to Lumio or were wrongfully retained by SET. The remaining allegations in Paragraph 75 are denied.**

76. R. Schade and Y. Schade wrongfully retained, and failed to reimburse Lumio for, funds due and owing to Lumio for personal expenses charged to their corporate credit cards.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivables but deny any implication that such payments belonged to**

**Lumio or were wrongfully retained by SET. The remaining allegations in Paragraph 76 are denied.**

77.     Defendants have been unjustly enriched.

**ANSWER: Paragraph 77 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

78.     It is inequitable to permit Defendants to retain these wrongfully held funds.

**ANSWER: Paragraph 78 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

79.     As a direct and proximate result of Defendants' wrongful retention, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $184,330.

**ANSWER: Denied.**

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
*Against R. Schade and Y. Schade*

80.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.**

81.     As officers and/or directors of Lumio, R. Schade and Y. Schade owed fiduciary duties of care, loyalty, and good faith to Lumio.

**ANSWER: Paragraph 81 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

82.     R. Schade and Y. Schade breached these duties by using corporate credit cards for personal expenses and failing to remit accounts receivable owed to Lumio.

**ANSWER: Paragraph 82 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

83.    Defendants further breached these duties by, as late as January 2023, failing to seek redress or resolution or pursue litigation related to SET's misappropriation of corporate funds and SET's failure to remit funds owed to Lumio.

**ANSWER: Admitted only that following the closing of the APA, SET received certain payments for accounts receivables but deny any implication that such payments belonged to Lumio or were wrongfully retained by SET. The remaining allegations in Paragraph 83 are denied.**

84.    As a direct and proximate result, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $184,330.00.

**ANSWER: Denied.**

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – Breach of APA Non-Compete)**
*Against R. Schade and Y. Schade*

85.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.**

86.    The APA is a valid and enforceable contract.

**ANSWER: Paragraph 86 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

87.    Lumio performed all of their obligations under the APA.

**ANSWER: Paragraph 87 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

88.     R. Schade and Y. Schade breached the APA by, during the period between the Closing Date of the APA and the four-year anniversary of the Closing Date (i.e., December 10, 2021 – December 10, 2025): (i) being employed by and/or providing services to a direct competitor; (ii) soliciting and hiring Lumio employees to work for a competitor; (iii) soliciting Lumio customers on behalf of a direct competitor; and/or (iv) possessing and maintaining an ownership interest in a competitor.

**ANSWER: Denied.**

89.     As a direct and proximate result of R. Schade's and Y. Schade's breaches, Plaintiff has suffered damages in an amount to be determined at trial.

**ANSWER: Denied.**

**SIXTH CAUSE OF ACTION**
**(Breach of Contract – Employment Agreements & Restrictive Covenant Agreements)**
*Against R. Schade and Y. Schade*

90.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to the preceding paragraphs as if fully set forth herein.**

91.     The Employment Agreements and Restrictive Covenant Agreements are valid and enforceable contracts.

**ANSWER: Paragraph 91 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

92.     Lumio performed all of its obligations under the Employment Agreements and Restrictive Covenant Agreements.

**ANSWER: Paragraph 92 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, denied.**

93.     R. Schade and Y. Schade breached their respective Employment Agreements and Restrictive Covenant Agreements by, during their employment with Lumio and/or within one year following the termination of their employment: (i) being employed by and/or providing services to a direct competitor; (ii) soliciting and hiring Lumio employees to work for a competitor; (iii) soliciting Lumio customers on behalf of a direct competitor; and/or (iv) possessing and maintaining an ownership interest in a competitor.

**ANSWER: Denied.**

94.     As a direct and proximate result of R. Schade's and Y. Schade's breaches, Plaintiff has suffered damages in an amount to be determined at trial.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an order:

A.     Finding Defendants liable to Plaintiff for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty;

B.     Awarding damages in an amount to be determined resulting from Defendants' breach of contract, conversion, unjust enrichment, and breach of fiduciary duty;

C.     Awarding attorneys' fees, litigation costs and expenses, and interest; and

D.     Granting Plaintiff such other and further relief as the Court deems just and proper.

**ANSWER: The allegations in Plaintiff's prayer for relief constitute Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendants deny the allegations in Plaintiff's prayer for relief and expressly deny that Plaintiff is entitled to any relief.**

## AFFIRMATIVE DEFENSES

Pursuant to Fed. R. Civ. P. 8(c), made applicable by Fed. R. Bankr. P. 7008, for its Affirmative Defenses, Defendants state and alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver or release, estoppel (including, without limitation, equitable estoppel and judicial estoppel), *res judicata*, and/or laches and unclean hands.

## THIRD AFFIRMATIVEDEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred by the doctrines of setoff, payment, or recoupment, including, without limitation, Defendants' right of setoff pursuant to 11 U.S.C. § 553 or as prescribed by applicable law.

## FOURTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, by the applicable statutes of limitations and statutes of repose.

## FIFTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, due to the failure to mitigate damages.

## SIXTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, based on Lumio's own culpable or excusable neglect.

## SEVENTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, because any damages allegedly sustained by Lumio are the result of its own actions and, thus, Defendants were not the proximate cause of any damages claimed by Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, because Lumio's alleged damages resulted from superseding or intervening causes, which were unrelated to the Complaint.

## NINTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, because Lumio' alleged damages were caused by the actions of third parties over which Defendants have no control.

## TENTH AFFIRMATIVE DEFENSE

The relief sought in the Complaint should be denied to the extent that any of Plaintiff's claims are barred, either in whole or in part, because any damages allegedly sustained by Lumio are wholly speculative.

## RESERVATION OF RIGHTS

Defendants reserve the right to raise additional defenses as they become known to Defendants, or as they may become available to Defendants during these proceedings, consistent with applicable law, including without limitation, Federal Rule of Civil Procedure 8(c), made applicable by Federal Rule of Bankruptcy Procedure 7008(c).

## COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Rex Schade and Yumi Schade (the "Counterclaim Plaintiffs"), by and through their undersigned counsel, and for their counterclaims against Plaintiff, state as follows:

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and (O).

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1409.

4.    Pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 7012-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Counterclaim Plaintiffs consent to entry of final orders or a final judgment by this Court in this adversary proceeding.

5.    Defendant/counterclaim plaintiff Rex Schade is an individual and citizen of the State of Washington.

6.    Defendant/counterclaim plaintiff Yumi Schade is an individual and citizen of the State of Washington.

7.    The Plaintiff/counterclaim defendant is Jeffrey T. Varsalone, solely in his capacity as the Liquidating Trustee of the Trust.

## FACTUAL BACKGROUND

8.    Lumio was founded in December 2021 through the strategic combination of four regional residential solar businesses: (1) SET, (2) Atlantic Key Energy, LLC ("AKE"), (3) DECA Living, LLC ("DECA"), and (4) Lift Energy Construction Inc. ("LIFT").

9.      To effectuate the strategic combination, Lumio entered into four separate agreements with each of SET, AKE, DECA, LIFT, effective December 10, 2021, whereby Lumio purchased, *inter alia*, certain of each company's most essential assets – the entire guts and business blueprints for the company, including without limitation, all confidential and proprietary information, strategic plans, pricing information, customer data, vendor data and information, manufacturer data and information, receivables, rights to payments, and contracts.

10.     The APA was entered into between (1) Lumio, as buyer, (2) R. Schade, Y. Schade, and Jonathan Gibbs as SET shareholders, and (3) SET, as seller.  A true and correct copy of the APA is attached hereto as **Exhibit A**.

### I.      Pre-Closing Promises

11.     Prior to the strategic combination, Lumio informed R. Schade and Y. Schade that it required a cash injection to cover operational expenses while the strategic combination was effectuated and in order to "hit the ground running."  Specifically, to fill this need Lumio, by and through Greg Butterfield ("Butterfield"), requested that R. Schade and Y. Schade, through SET, contribute $250,000.00 per month for the first three months of Lumio's operations.

12.     Butterfield (as an agent of Lumio) promised R. Schade and Y. Schade that Lumio would reimburse them for borrowing these amounts after the closing on the APA.

13.     Relying on these promises, and out of a desire to see Lumio succeed, R. Schade and Y. Schade provided Lumio with $750,000, expecting to be repaid after the strategic combination was completed.

14.     However, after the closing of the APA, R. Schade and Y. Schade and despite multiple requests, R. Schade and Y. Schade never received reimbursement for the $750,000 they provided to Lumio.

15.     Separately, prior to the closing of the APA, SET incurred $395,000 in sales expenses tied to new revenue that was installed and funded post-closing of the APA.

16.     At the time, Butterfield, co-founder and former Chairman of Lumio, Wendell Laidley, former Chief Financial Officer of Lumio, and Wade Bitter, former Chief Accounting Officer of Lumio, agreed to reimburse R. Schade and Y. Schade for these expenses.

17.     On August 22, 2022, Mr. Butterfield asked R. Schade and Y. Schade whether they would accept equity in Lumio instead of the reimbursement for $395,000.

18.     Relying on these promises, R. Schade and Y. Schade agreed to Lumio's offer. However, they never received any additional shares in Lumio, nor did they receive reimbursement for the $395,000 in expenses.

19.     Despite the fact that R. Schade and Y. Schade were never reimbursed, Lumio retained the revenue generated by the sales expenses paid by Counterclaim Plaintiffs.

## II.     Unpaid Earn-out Bonuses

20.     On or about December 10, 2021, in connection with and as a condition precedent to the closing of the transaction contemplated by the APA, R. Schade and Lumio entered into: (i) an Employment Agreement pursuant to which R. Schade would be employed as Lumio's Vice President of Northwest Sales in exchange for a base salary of $250,000 per year and eligibility for an annual bonus of up to $550,000 (the "2021 R. Schade Employment Agreement"). A true and correct copy of the 2021 R. Schade Employment Agreement is attached hereto as **Exhibit B**.

21.     On or about May 12, 2023, R. Schade entered into a subsequent employment agreement with Lumio pursuant to which he would continue to be employed by Lumio as its Senior Vice President of Sales over PNW (the "2023 R. Schade Employment Agreement"). A true and correct copy of the 2023 R. Schade Employment Agreement is attached hereto as **Exhibit C**.

22.     On or about December 10, 2021, in connection with and as a condition precedent to the closing of the transaction contemplated by the APA, Y. Schade and Lumio entered into: (i) an Employment Agreement pursuant to which Y. Schade would be employed as Lumio's Vice President of Integration in exchange for a base salary of $250,000 per year and eligibility for an annual bonus of up to $550,000 (the "2021 Y. Schade Employment Agreement"). A true and correct copy of the 2021 Y. Schade Employment Agreement is attached hereto as **Exhibit D**.

23.     On or about May 12, 2023, Y. Schade entered into a subsequent Employment Agreement with Lumio pursuant to which Y. Schade would continue to be employed by Lumio as its Senior Vice President of Strategic Operations (the "2023 Y. Schade Employment Agreement", together with the 2021 R. Schade Employment Agreement, the 2023 R. Schade Employment Agreement and the 2021 Y. Schade Employment Agreement, the "Employment Agreements"). A true and correct copy of the 2023 Y. Schade Employment Agreement is attached hereto as **Exhibit E**.

24.     Pursuant to the Employment Agreements, R. Schade and Y. Schade were each entitled to receive Five Hundred Fifty Thousand Dollars ($550,000.00) to be paid out over the course of a one-year period on a quarterly basis (the "Earn-Out Bonuses") beginning in the second quarter of 2022. *See* Ex. B, C § 3.1(b); Ex. D, E § 3.1(b).

25.     R. Schade and Y. Schade never received any portion of the Earn-Out Bonuses.

26.     When R. Schade and Y. Schade pressed Lumio, Butterfield informed them that Lumio was experiencing "cash flow constraints" and that Lumio could not make these payments at the time.

27.     Butterfield promised that Lumio would soon start making payment on the Earn-Out Bonuses.

28.     As of the date of this filing, R. Schade and Y. Schade never received any portion of their Earn-Out Bonuses.

### III.     Additional Founder Compensation

29.     In January 2022, Lumio implemented a program where the founders, including R. Schade and Y. Schade, would pool a $0.03/watt override on all sales volume (the "Founders Program").  The total override would then be split and paid out evenly to all founders, including R. Schade and Y. Schade.

30.     The Founders Program began in the second quarter of 2022 and would be paid out at the end of the following quarter to ensure accurate figures.

31.     The first of these compensation payments was paid in September 2022 for sales from the second quarter of 2022.

32.     R. Schade and Y. Schade received their respective payments for the second quarter of 2022.

33.     Lumio failed to make payments for the third and fourth quarters of 2022 and did not make any payments in 2023.

34.     R. Schade and Y. Schade followed up numerous times with Lumio executives and requested Lumio's audited financials and their respective sales volumes for each quarter.

35.     However, each request was ignored and dismissed by Lumio.

36.     Based on R. Schade's and Y. Schade's sales volumes for 2022 and 2023, through the Founders Program, they were entitled to, but did not receive, approximately $800,000.

#### IV.    Unpaid Reimbursements

37.    In 2022, Lumio changed its policy regarding company credit cards and requested that Counterclaim Plaintiffs use their personal credit cards for company expenses and then submit their receipts for reimbursements.

38.    As required by Lumio under this new policy, R. Schade and Y. Schade would regularly use their personal credit cards for company expenses and consistently submitted their receipts for reimbursement without issue.

39.    However, without warning or explanation, Lumio stopped reimbursing R. Schade and Y. Schade for their submitted expenses.

40.    Lumio cited cash constraints and asked R. Schade and Y. Schade to wait for their reimbursements but promised they would be forthcoming.

41.    Lumio never stated that it believed R. Schade's and Y. Schade's expenses were improper, invalid, or otherwise not subject to reimbursement.

42.    However, R. Schade and Y. Schade never received reimbursement for these company expenses.

43.    In total, from 2022 to 2023, R. Schade and Y. Schade incurred $278,626.86 in unreimbursed expenses related to Lumio's operations

#### V.    The Official Regional Event

44.    Separately, each of the legacy companies of Lumio (DECA, AKE, LIFT, and SET) would hold annual sales events as official Lumio regional events in their respective legacy regions. Such events are common in the industry.  These events continued after the strategic combination and all expenses were paid for by Lumio.

45.    Prior to January 2023, Lumio had covered the expenses for DECA, AKE, and LIFT's respective annual sales events.

46.    At the time of SET's annual sales event in January 2023 (the "Official Regional Event"), Lumio was tight on cash and could not afford to cover the expenses associated with the Official Regional Event.  Instead, Lumio asked R. Schade and Y. Schade to cover the costs of the Official Regional Event with the promise to reimburse them for all expenses.

47.    Once again, relying on these promises, R. Schade and Y. Schade agreed to do so.

48.    The Official Regional Event was a success with hundreds of new recruits were able to attend and join the sales force of three hundred existing reps.

49.    Immediately following the event, R. Schade and Y. Schade sent multiple emails with breakdowns of the expenses to Butterfield, and Cal Taylor, Vice President Corporate Controller, to work out a payment plan to and start the process of getting paid back.  These emails and text messages were completely ignored and never addressed.

50.    The total cost of the Official Regional Event was approximately $350,000 and $172,244.23 was covered by R. Schade and Y. Schade personally—relying on Lumio's and Butterfield's promises that they would be reimbursed for these costs.

51.    Upon information and belief, the remaining balance was paid for by Richard Teesdale, Vice President of Sales for the Pacific Northwest Region at Lumio.

52.    Despite numerous follow-up communications with Lumio's executives, R. Schade and Y. Schade were never reimbursed for the Official Regional Event.

53.    Upon information and belief, Mr. Teesdale also was never reimbursed for the Official Regional Event.

## VI.    Unpaid Commission Payments

54.    On April 23, 2023, R. Schade was transitioned from a full-time employee of Lumio into a "Direct Seller," which meant that Lumio treated him as an independent contractor.

55.    After Lumio transitioned R. Schade to an independent contractor status, Lumio agreed that R. Schade would receive a percentage of eligible sales made by him for Lumio as a commission in addition to a base salary of $40,000.

56.    Under that arrangement, R. Schade made and closed upon numerous sales in his region.

57.    Indeed, prior to R. Schade being terminated from Lumio, he earned but did not receive not less than $850,000 in commissions for sales that had been installed and funded and pro-rated salary under his agreement as an independent contractor.

58.    These sales were installed and funded.  In other words, Lumio accepted the revenue and the benefit of the sales made by R. Schade as a Direct Seller.

59.    Upon information and belief, Lumio consistently paid pipeline commissions to other employees and independent that separated from Lumio but who had earned commissions and overrides prior to termination.

## COUNT I – PROMISSORY ESTOPPEL

60.    Counterclaim Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

61.    Prior to the closing of the APA, Lumio requested that R. Schade and Y. Schade provide it with a cash infusion of $750,000 to be repaid following the closing.

62.    Separately, SET incurred $395,000 in sales expenses tied to new revenue that was installed and funded post-closing of the APA, also to be repaid following the closing.

63.    Despite this, Lumio never reimbursed Counterclaim Plaintiffs for any of these expenses.

64.    Lumio expected or should have expected that Counterclaim Plaintiffs would rely on its promise to reimburse them.

65.    Counterclaim Plaintiffs did, in fact, reasonably rely on Lumio's promise to reimburse them.

66.    Counterclaim Plaintiffs incurred a definite and substantial detriment when Lumio failed to reimburse them.

67.    As a direct and proximate result of Lumio's wrongful actions, Counterclaim Plaintiffs have suffered damages in an amount to be determined at trial but not less than $1,145,000.00.

## COUNT II – BREACH OF CONTRACT
(Breach of Employment Agreements)

68.    Counterclaim Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

69.    The Employment Agreements are valid and enforceable contracts.

70.    R. Schade and Y. Schade performed all of their obligations under their respective Employment Agreements.

71.    Lumio breached the Employment Agreements by failing to pay R. Schade and Y. Schade their respective Earn-Out Bonus of $550,000 each.

72.    As a direct and proximate result of Lumio's breach, Counterclaim Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,100,000.00.

## COUNT III – BREACH OF CONTRACT
(Failure to Pay Direct Seller Commissions)

73.     Counterclaim Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

74.     R. Schade and Lumio had a valid and enforceable contract in the form of the agreement R. Schade's commissions and salary as a Direct Seller.

75.     R. Schade performed all of his obligations under that agreement.

76.     In accordance with that agreement, R. Schade was to receive a commission based on his sales volume.

77.     Prior to R. Schade being terminated from Lumio, he earned but did not receive commissions for approximately $850,000.

78.     Lumio breached the Employment Agreements by failing to pay R. Schade his commissions.

79.     As a direct and proximate result of Lumio's breach, Counterclaim Plaintiff R. Schade has suffered damages in an amount to be determined at trial, but not less than $850,000.00.

## COUNT IV – BREACH OF CONTRACT
(Failure to Amounts Under Founders Plan)

80.     Counterclaim Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81.     The Employment Agreements are valid and enforceable contracts.

82.     R. Schade and Y. Schade performed all of their obligations under their respective Employment Agreements.

83.     Pursuant to the Employment Agreements, Lumio implemented the Management Plan.

84.     In accordance with the Management Plan, Lumio implemented the Founders Program.

85.     Pursuant to the Founders Program, R. Schade and Y. Schade, as founders, contributed a $0.03/watt override on their sales volume in 2022 and 2023.

86.     R. Schade and Y. Schade were to receive payments for their contributions each quarter beginning with the second quarter of 2022.

87.     R. Schade and Y. Schade never received payments for the third and fourth quarters of 2022 or any quarter of 2023.

88.     Lumio breached the Employment Agreements by failing to pay R. Schade and Y. Schade their respective payments under the Founders Program.

89.     As a direct and proximate result of Lumio's breach, Counterclaim Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $800,000.00.

## COUNT V – PROMISSORY ESTOPPEL

90.     Counterclaim Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

91.     Pursuant to Lumio's policies, Counterclaim Plaintiffs would charge company expenses on their personal credit cards and then submit the expenses for reimbursement.

92.     Without warning or explanation, Lumio stopped reimbursing Counterclaim Plaintiffs for valid business expenses.

93.     Lumio reassured Counterclaim Plaintiffs that they would be reimbursed at a later date.

94.     Lumio expected or should have expected that Counterclaim Plaintiffs would rely on its promise to reimburse them.

95.     Counterclaim Plaintiffs did, in fact, reasonably rely on Lumio's promise to reimburse them.

96.     Counterclaim Plaintiffs incurred a definite and substantial detriment when Lumio failed to reimburse them.

97.     As a direct and proximate result of Lumio's wrongful actions, Counterclaim Plaintiffs have suffered damages in an amount to be determined at trial but not less than $278,626.86.

## COUNT VI – PROMISSORY ESTOPPEL

98.     Counterclaim Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

99.     In January 2023, Lumio was tight on cash and could not afford to cover the expenses associated with the Official Regional Event.

100.    Lumio asked Counterclaim Plaintiffs to cover the costs of the Official Regional Event with the promise to reimburse them for all expenses.

101.    Lumio reassured Counterclaim Plaintiffs that they would be reimbursed at a later date.

102.    Lumio expected or should have expected that Counterclaim Plaintiffs would rely on its promise to reimburse them.

103.    Counterclaim Plaintiffs did, in fact, reasonably rely on Lumio's promise to reimburse them.

104.    Counterclaim Plaintiffs incurred a definite and substantial detriment when Lumio failed to reimburse them for the Official Regional Event.

105.    As a direct and proximate result of Lumio's wrongful actions, Counterclaim Plaintiffs have suffered damages in an amount to be determined at trial but not less than $172,244.23.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counterclaim Plaintiffs requests that: (i) judgment be entered in its favor and against Plaintiff on each and every one of the foregoing counts, together with an award of Defendants' costs and attorneys' fees incurred; (ii) the Complaint be dismissed with prejudice; (iii) grant Defendants their fees and costs associated with defending the claims asserted against them in the Complaint in accordance with the APA (*See* Ex. A § 7.7(d)); (iv) grant Counterclaim Plaintiffs the relief requested in the Counterclaims; and iv) the Court award Defendants/Counterclaim Plaintiffs such other and further relief as is just and proper under the circumstances.

Dated: November 14, 2025
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

 /s/ Kevin M. Capuzzi
Kevin M. Capuzzi (#5462)
Juan M. Martinez (#6863)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com
        jmartinez@beneschlaw.com

*Counsel to Rex Schade, Yumi Schade, and Jonathan Gibbs*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin M. Capuzzi, Esq., hereby certify that on November 14, 2025, I caused a true and correct copy of the foregoing pleading to be served via CM/ECF and via electronic mail to counsel of record listed below:

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney, Sr. (No. 3578)
Matthew O. Talmo (No. 6333)
Brenna A. Dolphin (No. 5604)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@morrisnichols.com
    mtalmo@morrisnichols.com
    bdolphin@morrisnichols.com
*-and-*

**DLA PIPER LLP (US)**
Joseph A. Piesco (admitted *pro hac vice*)
Edward Rooker (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: Joseph.Piesco@us.dlapiper.com
    Edward.Rooker@us.dlapiper.com

*Counsel to the Liquidating Trust*

Dated: November 14, 2025
    Wilmington, Delaware

**BENESCH, FRIEDLANDER,
    COPLAN &ARONOFF, LLP**

By: */s/ Kevin M. Capuzzi*
    Kevin M. Capuzzi (DE No. 5462)